# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| AN PHAN,<br><br>        Plaintiff,<br><br>v.<br><br>AGODA COMPANY PTE. LTD.,<br><br>        Defendant. | Case No. 16-cv-07243-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 37] |

On four separate occasions after booking travel on Defendant Agoda Company Pte. Ltd.'s website, Plaintiff An Phan received a text message from Agoda that read "Good news! Your Agoda booking [number] is confirmed. Manage your booking with our free app http://app-agoda.com/GetTheApp." Plaintiff filed this putative class action asserting a single cause of action: violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. Before the Court is Defendant's pre-certification motion for summary judgment. *See* ECF 37. The sole question the Court must answer is whether the text messages Phan received qualify as advertising or telemarketing under the TCPA. The Court holds that they do not.

Accordingly, for the reasons discussed below, Agoda's motion for summary judgment is GRANTED.

## I. FACTS[1]

### A. Agoda's Booking Process and Policies

Defendant Agoda Company Pte. Ltd. ("Agoda") is an international travel service provider based in Singapore that allows consumers to book travel accommodations, including hotels and

---

[1] The facts relevant to this motion are undisputed, except as otherwise noted.

flights, online. *See* Compl. ¶ 11. ECF 1-2; Decl. of Alexis Siarkiewicz ISO MSJ ¶¶ 2–3 ("Siarkieweicz Decl."), ECF 37-2. Agoda has both a website and a phone app that allow customers to make bookings through substantively similar processes. Decl. of Anne Kelts ISO MSJ ("Kelts Decl."), Ex. 2 at 28–30, ECF 37-9. The app, like the website, has various functionalities, including allowing users to manage travel reservations, access vouchers and confirmation numbers, and locate booking properties on a map. *Id.* at 31; Kamonchanok Rattanasrimata Decl. ISO MSJ ¶¶ 9–10 ("Rattanasrimata Decl."), ECF 37-4. The app allows customers to both manage existing bookings and create new bookings. *See* Zelenski Decl. ISO Opp. to MSJ ("Zelenski Decl."), Ex. 1 at 14, 18–19, ECF 43-1. And the app is capable of "offering lower prices than those available on Agoda's website" and "showing deals that could not be shown on Agoda's website." *Id.* at 20–21. Agoda also advertises the app as having these capabilities. *Id.* at 19–21.

During the booking process, the customer first chooses the specifics of his booking, such as location, travel dates, and number of travelers. *Id.* at 28. Once the customer has selected these criteria, he enters in his personal information, either by signing into an existing Agoda account or continuing as a guest, and then proceeds to the payments page. *Id.* On the payments page, the customer enters the necessary information to pay for his booking, though the customer can choose to pay at the time of booking or pay later. *Id.* at 29. On that same page, in blue hyperlinked text, are the terms "privacy policy" and "general terms," which link the user to the full text of Agoda's Privacy Policy and Terms of Use, respectively. *Id.* at 8, 30. Agoda represents that its Privacy Policy and Terms of Use have remained materially the same since 2013, the beginning of the putative class period here. *See id.* at 8; Compl. ¶ 30.

Directly above the "Book Now" button, also on the payments page, is the statement "I agree with the Privacy Policy and general terms by booking this room." *Id.* at 29. By completing the booking and agreeing to Agoda's Terms of Use, the customer agrees "to receive confirmation messages (email and/or SMS)," which the Terms of Use describe as "transactional" and as "not part of the newsletters or marketing mails[] from which [users] can unsubscribe." Kelts Decl., Ex. 3 at AG000089. The Privacy Policy further states that the "confirmation" text messages "are not

2

marketing messages," but instead are "part of [the user's] accommodation reservation process" and "contain information for [the user] to check in at [his] booked accommodation." *Id.*, Ex. 4 at AG000096. The user cannot opt out of these text messages. *Id.*

Before the booking process is completed, the customer also selects whether to "opt in" or "opt out" of receiving Agoda's marketing promotions. Decl. of Richard Lyne ISO MSJ ¶ 6 ("Lyne Decl."), ECF 37-1. Once the booking process is completed, and the third-party hotel has confirmed to Agoda the customer's reservation, Agoda, through its third-party global messaging service provider Clickatell, sends a text message to the customer to confirm the booking. Kelts Decl., Ex. 2 at 30; Kelts Decl., Ex. 1 ¶ 5, ECF 37-8. Agoda sends confirmation text messages only to users who have both provided their phone numbers and agreed to Agoda's Terms of Use and Privacy Policy. *See id.*, Ex. 2 at 7. Agoda sends these text messages, in part, "to encourage customers to download the Agoda mobile-device application in order to manage with the Agoda app the requested booking, and also in part, . . . to confirm the requested booking for the customer." *See* Zelenski Decl., Ex. 2 at 10, ECF 43-2.

### B. Phan's Use of Agoda's Services and Receipt of Text Messages

On November 4, 2016, Plaintiff An Phan booked three hotel reservations through Agoda's website, and he made a fourth reservation on November 10, 2016. *See* Compl. ¶¶ 18–19; Kelts Decl., Ex. 2 at 14. For each booking, Phan provided his telephone number and agreed to the Terms of Use and Privacy Policy. *Id.* at 15. He also opted in to receiving marketing messages during the time period at issue here. Rattanasrimata Decl., Ex. A, ECF 37-5. At the hearing on this motion, the parties disputed whether Phan paid for the booking at the time of booking or later when he completed his travel. After Phan completed each booking, Agoda sent him the following text message: "Good news! Your Agoda booking [number] is confirmed. Manage your booking with our free app http://app-agoda.com/GetTheApp." Compl. ¶ 21; Kelts Decl., Ex. 2 at 14. The URL contained a hyperlink to download Agoda's app. *Id.*

### C. Procedural History

On November 14, 2016, Plaintiff filed the instant class action Complaint in the Superior Court of California for the County of Santa Clara against Agoda, Agoda International USA Inc.,

3

1 and the Priceline Group Inc. *See generally* Compl. In his Complaint, Plaintiff asserts a single cause of action under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. On December 19, 2016, the case was removed to this Court. *See* ECF 1. On January 23, 2017, Plaintiff voluntarily dismissed the two non-Agoda Defendants with prejudice. *See* ECF 12. On January 26, 2017, Agoda filed an Answer to the Complaint. *See* ECF 15. On April 25, 2017, the Court held a case management conference, setting the deadline to hear dispositive motions in this case to December 12, 2019. The parties later stipulated that fact discovery would close on February 10, 2020. ECF 27. On June 21, 2018, Agoda filed the instant motion for summary judgment, ECF 37, and the Court held a hearing on the motion on November 8, 2018, ECF 74. The Court has not yet certified a class in this case.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party has the burden of establishing that there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

In its motion for summary judgment, Agoda argues that the Court should grant summary judgement on Phan's sole claim, for violation of the TCPA, for three reasons: (1) Phan provided the required level of consent under the TCPA because the text messages he received did not contain advertising and were not telemarketing; (2) Phan waived his rights to assert his TCPA

1    claim by agreeing to Agoda's Terms of Use and Privacy Policy and by continuing to make

2    bookings with Agoda after receiving the allegedly unlawful text messages; and (3) Phan agreed to

3    a Singapore choice of law and venue clause in the Terms of Use. *See* Mot. at 3–4. As discussed

4    below, the Court agrees with Agoda's first argument, and thus does not address Agoda's second

5    and third arguments.

### A. Requirements Under the TCPA

The TCPA makes it "unlawful for any person within the United States . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Text messages are considered "calls" under the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

As to the third element, consent is an affirmative defense on which the defendant bears the burden of proof. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). The type of consent required depends on the content of the message. If the text message "includes or introduces an advertisement or constitutes telemarketing," the sender is required to obtain "prior express *written* consent" of the recipient. 47 C.F.R. at §§ 64.1200(a)(1) and (2) (emphasis added). To constitute advertising, the text message must contain "material advertising the commercial availability or quality of any property, goods, or services." *Id.* § 64.1200(f)(1). To constitute telemarketing, the text message must be "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *Id.* § 64.1200(f)(12). Courts approach the question of whether a message constitutes advertising or telemarketing with "a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). If the message contains advertising or is telemarketing, the sender must have secured, prior to sending the message, the signature of the recipient in a written agreement that includes several

5

specified disclosures. *See* 47 C.F.R. § 64.1200(f)(8).

If the text message does not contain advertising and is not telemarketing, the requirements for prior express consent are less stringent. A consumer must only "knowingly" agree to receive such messages by providing his phone number for the reasons served by the message (*i.e.*, to transact the business contemplated when the recipient provided his number). *See Van Patten*, 847 F.3d at 1044–45.

Finally, if the text message serves a "dual purpose"—that is, includes both advertising/telemarketing *and* merely informational or transactional communications—the messages are subject to the heightened express written consent requirements. *See In the Matter of Rules and Regulations Implementing the TCPA of 1991*, Report and Order, 18 FCC Rcd. 14014, 14097–99 (July 3, 2003).

### B. Application of the TCPA to the Text Messages Received by Phan

Though a claim under the TCPA has three elements, Agoda does not dispute that Phan satisfies the first two elements of the TCPA claim—that Agoda sent text messages to Phan's cellular phone using an automatic telephone dialing system. *See generally* Mot. (failing to challenge these elements). Instead, Agoda's motion for summary judgment argues that it wins on the third element, because it has successfully established an affirmative defense of consent. *See* Reply at 3, ECF 46 ("[T]he parties' only disagreement" is "whether or not the text messages that Plaintiff received can be classified as telemarketing or advertising under the TCPA . . . such that Plaintiff's actions constituted sufficient consent."); Opp. at 1 ("[T]he only element at issue . . . is . . . whether Agoda's messages were sent without Plaintiff's consent."). The question of whether Phan consented turns solely on whether the text messages here contained advertising or constituted telemarketing. Indeed, Phan concedes that his claim fails if the text messages are neither advertising nor telemarketing. *See* Opp. at 24 ("Plaintiff agrees with the notion that, if the at-issue messages do not constitute advertising or telemarketing, they do not violate the TCPA.").

Agoda argues in its motion that the text messages were neither advertising nor telemarketing, but instead were "merely transactional" because they served only two purposes: (1) to confirm "that [Phan's] bookings were reserved with the third party hotel"; and (2) to direct Phan

6

to the app "to locate and modify the booking prior to the completion of [his] stay." Mot. at 11. As to the latter purpose, Agoda argues that directing Phan to the app so he could modify his booking was merely transactional because the business transaction between Agoda and Phan did not conclude until Phan completed his stay at the hotels he booked through Agoda. *Id.* at 14. Because the transaction was ongoing at the time the text messages were sent, the argument goes, the link to the app was directed at completing the ongoing transaction, as opposed to marketing a separate product. *Id.* at 13–14 (citing *Aderhold v. car2go N.A., LLC* ("*Aderhold II*"), No. 14-35208, 668 Fed. App'x 795, 796 (9th Cir. 2016)). For the same reasons, the inclusion of the hyperlink to the app alone does not transform these transactional messages into advertising. *See id.* at 12.

Phan, by contrast, argues that the messages were advertising or telemarketing, and not merely transactional, because the business transaction was completed at the time of booking, rendering the app-download link "superfluous." Opp. at 18; *see* Opp. at 22 ("Plaintiff's bookings . . . were complete as of the date he received his messages."). Moreover, Phan asserts, the messages "were sent specifically to encourage the use of the app" and "the app was specifically designed to allow message recipients to undertake transactions having nothing to do with the reservation that was being confirmed by the text messages themselves." *Id.* at 20. As such, regardless of the partially confirmatory nature of the text messages, the link to the app served to advertise or market the commercial availability of a separate Agoda product. *See* Opp. at 3.

In making their arguments, both parties analogize to and distinguish manifold cases in this Circuit and others. A review of this case law is instructive here.

In *Aderhold II*, the Ninth Circuit affirmed the district court's ruling that the text message at issue was not "telemarketing."[2] 668 Fed. App'x at 796. The plaintiff in that case had signed up for a car-sharing service and immediately received a text message prompting him to enter an

---

[2] Though the Ninth Circuit discussed only telemarketing, the district court necessarily held that the text message was neither advertising nor telemarketing, because it held that it did not need to determine whether the plaintiff had provided the express written consent necessary for advertising or telemarketing texts. *See Aderhold v. Car2go N.A., LLC* (*Aderhold I*), No. C13-489-RAJ, 2014 WL 794802, at *10 (W.D. Wash. Feb. 27, 2014).

7

activation code into a link emailed to him. *See Aderhold v. Car2go N.A., LLC* (*Aderhold I*), No. C13-489-RAJ, 2014 WL 794802, at \*1 (W.D. Wash. Feb. 27, 2014). The district court concluded that the message was not telemarketing because it served the limited purpose of allowing the plaintiff to complete his registration. *Id.* at \*9. The court rejected the plaintiff's argument that diversion to the defendant's website was sufficient to render the message telemarketing simply because the website also contained promotions for the defendant's services. *Id.* In affirming, the Ninth Circuit agreed with the district court that the "message contain[ed] no content encouraging purchase of [the defendant's] services" and was "directed instead to completing the registration process." *Aderhold II*, 668 Fed. App'x at 796.

Importantly, the Ninth Circuit followed a Federal Communications Commission's determination that messages "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements." *Id.* (quoting *In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991* ("*In re Rules*"), 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)). One example provided by the FCC of a message that would not be an unsolicited advertisement was "[a] travel itinerary for a trip a customer has agreed to take or is in the process of negotiating." *In re Rules*, 21 FCC Rcd. 3787, 3813 ¶ 49. The FCC ultimately held that messages "relat[ing] specifically to existing accounts and ongoing transactions" do not constitute advertising. *Id.* at 3812 ¶ 49.

Using the same rationale, several district courts have held that messages or calls were not advertising or telemarketing because they pertained to ongoing transactions. In *Wick v. Twilio Inc.*, the plaintiff provided his personal information, including his telephone number, in the course of ordering a free sample on a website, but abandoned the order before completing it. No. C16-00914RSL, 2016 WL 6460316, at \*1 (W.D. Wash. Nov. 1, 2016). He then received a text message (and call) instructing him to follow a link to complete his order. The court held this message was not telemarketing because "the purpose of these communications was customer service" and "related solely to the consumer transaction [the plaintiff] had initiated" but not yet completed. *Id.* at \*2. The plaintiff had not alleged that the text "offered or encouraged the purchase of any product" other than the product he had begun to order online. *Id.*

8

Similarly, in *Daniel v. Five Stars Loyalty, Inc.*, the plaintiff signed up for a Five Points rewards program and received a text message instructing him to "reply with [his] email to finish registering and get free pts!" No. 15-CV-03546-WHO, 2015 WL 7454260, at *1 (N.D. Cal. Nov. 24, 2015). The Court agreed with the *Aderhold I* court that "a text sent solely for the purpose of allowing the recipient to complete a registration process that he or she initiated" did not constitute telemarketing. *Id.* at *4. Specifically, the text message at issue was not telemarketing because it did not "urge [the plaintiff] to 'redeem' Five Stars points, did not direct him to a location where points could be redeemed or where more information about the Five Stars program could be obtained, and did not reference shopping or purchasing." *Id.* at *5.

The court in *Mackinnon v. Hof's Hut Restaurants, Inc.* came to the same conclusion, albeit in a somewhat different scenario. No. 2:17-cv-01456-JAM-DB, 2017 WL 5754308 (E.D. Cal. Nov. 28, 2017). In that case, the plaintiff made a dinner reservation at the defendant restaurant and provided his phone number to receive confirmation of the reservation. *Id.* at *1. The defendant sent him a text message confirming the reservation and providing a link to "view specials." *Id.* The Court held that the text message was not advertising or telemarketing because it "only served to confirm an expected commercial transaction (eating at Defendant's restaurant) that Plaintiff had initiated." *Id.* at *2 (citing *Daniel* and *Wick*). The inclusion of the link to view specials did not make the message advertising because it merely "facilitated Plaintiff's dining transaction by allowing him to view specials on his cellphone before sitting down to dinner." *Id. See also Smith v. Blue Shield of Cal. Life Ins. Co.*, 228 F. Supp. 3d 1056, 1067 (C.D. Cal. 2017) ("[M]ere fact that parts of [the defendant's] website contains the capability of allowing consumers to engage in commerce does not transform any message including its homepage into telemarketing or advertising"); *accord Reese v. Marketron Broad. Sols., Inc.*, No. CV 18-1982, 2018 WL 2117241, at *5 (E.D. La. May 8, 2018).

Other district courts have applied the TCPA to hold that certain calls and messages did constitute advertising or telemarketing. In *Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, the plaintiff allegedly enrolled in store in the defendant's rewards program and later that day received a text message stating, "Thank you for joining Häagen-Dazs Rewards! Download our app here:

9

[link]." No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *1 (N.D. Cal. Oct. 11, 2017). The court held that the plaintiff had stated a claim that the text was advertising or telemarketing. *Id.* at *2. In doing so, the court distinguished the texts at issue in *Daniel* and *Aderhold I* because in those cases the links were included to allow the recipient to complete a registration, whereas the text in *Haagen-Dazs* made clear on its face that the recipient had already "join[ed]" the rewards program. *Id.* As such, the encouragement to "download [the] app" was unnecessary and could constitute an advertisement.

Similarly in *Herrick v. QLess, Inc.*, the Court held that two messages related to plaintiffs' wait times at certain establishments were advertisements. 216 F. Supp. 3d 816, 817 (E.D. Mich. 2016). The first message encouraged the plaintiffs to sign up for an app that would allow them to see their "wait in real time, control when [they] get served & find more places with no lines—[link]" and, the second message both informed them that their wait was over and included a link to the defendant's website. *Id.* The court held the messages were advertising because they "advertised a 'free' app for the purpose of conveying the quality of [defendant's] products and services and soliciting plaintiffs to recruit more business customers." *Id.* at 819. In so holding, the Court rejected the defendant's argument that the free nature of the app rendered it merely informational. *Id.* However, the *Herrick* court did not explicitly consider whether the transaction at issue (namely, the plaintiffs' wait) was ongoing or had otherwise concluded.

In light of this case law and the requirements of the TCPA, this Court holds that the text messages Agoda sent to Phan were neither advertising nor telemarketing.

Both the context and the content of the messages dictate this result. As to the context, these messages were sent as part of an ongoing business transaction between Agoda and Phan. Phan used Agoda's services to book a travel itinerary online. Up until the time he finished his travel, he could cancel that booking or otherwise modify it through Agoda. Kelts Decl., Ex. 2 at 31; Rattanasrimata Decl. ¶¶ 9–10. As such, his transactional relationship with Agoda as to each booking continued through the time when he completed his travel. This scenario is directly comparable to *Mackinnon*, where the restaurant reservation was booked, but was not completed until the plaintiff ate dinner at the restaurant. Even assuming Phan paid for his booking on

10

Agoda's website at the time of booking (as opposed to at the time of travel), this fact does not change the Court's conclusion. Phan contracted with Agoda for the provision of travel accommodations; Agoda's obligations were only completed by its successfully providing those accommodations to Phan at the time of Phan's travel.

The content of the messages reinforces this conclusion. The text messages read: "Good news! Your Agoda booking [number] is confirmed. Manage your booking with our free app http://app-agoda.com/GetTheApp." Compl. ¶ 21; Kelts Decl., Ex. 2 at 14. The plain language of the text messages is limited to (1) confirming the booking (a purpose no court cited by Phan has found constitutes advertising or telemarketing); and (2) encouraging Phan to "manage [his] booking" via the app. *See also* Zelenski Decl., Ex. 2 at 10. These two purposes directly related to Phan's transaction with Agoda.[3] This language distinguishes this case from *Haagen-Dazs*, 2017 WL 4536422, at *1–*2, where the app link was included without an attendant function relevant to the transaction, and from *Herrick*, 216 F. Supp. 3d at 817–18, where the app link in the first message was included, in part, to "find more places with no line" and the website link in the second message was included without an attendant function relevant to the transaction.

The Court recognizes that this scenario is not directly comparable to those in *Aderhold*, *Wick*, and *Daniel*, where the plaintiffs each had to take an additional step before their agreements with the defendants were final. However, the focus of each of these cases was on whether the text messages were directly germane to the transaction. *See Wick*, 2016 WL 6460316, at *2 (holding purpose of text message was customer service related to transaction); *Aderhold I*, 2014 WL 794802, at *9 (concluding text message served limited purpose relevant to transaction); *Daniel*, 2015 WL 7454260, at *4 (same); *see also In re Rules*, 21 FCC Rcd. at 3812 ¶ 49 (concluding that a message is not advertising if its "purpose is to facilitate, complete, or confirm a commercial transaction"). Here, the context and the content of the messages demonstrate that the purpose of the messages was not to advertise or telemarket, but instead was directly cabined to facilitating and completing an existing transaction.

---

[3] Because the Court concludes that the messages did not have any marketing or advertising component, the dual purpose doctrine is inapposite.

11

Agoda's inclusion of the link to the app does not change this analysis. Nothing in the context or content of the messages indicates that the purpose of the messages was to "encourag[e] the purchase . . . of . . . property, goods, or services," as would be necessary for it to constitute telemarketing.[4] In fact, these messages are even more innocuous than those in either *Daniel*, 2015 WL 7454260, at *1, which encouraged the recipient to click the link to get free points, or *Mackinnon*, 2017 WL 5754308, at *1, which encouraged users to look at specials (as opposed to, say, managing their reservations). Ultimately, as in *Aderhold II*, the messages here "contain[ed] no content encouraging purchase of [Agoda] services." 668 Fed. App'x at 796.

And the inclusion of the link to the app is not enough to warrant holding that these messages were advertising under the TCPA. Though the app may fairly be considered a product or service of Agoda, the messages simply cannot be said to advertise the commercial availability of this product or service under the law. The app is readily analogized to Agoda's website, as the two platforms have substantially similar processes for booking travel and most (if not all) of the same functions. *See* Kelts Decl., Ex. 2 at 28–30. The court in *Aderhold I* rejected the argument that inclusion of a link to a website that contained promotions was sufficient to render the messages advertising or telemarketing. 2014 WL 794802, at *9; *accord Smith*, 228 F. Supp. 3d at 1067; *Reese*, 2018 WL 2117241, at *5. The same is true for the app. Even though it contains certain promotions, *see* Zelenski Decl., Ex. 1 at 20–21, the app was included "to facilitate, complete, or confirm a commercial transaction," making the link to it fully germane to the transaction. *In re Rules*, 21 FCC Rcd. at 3812 ¶ 49. Put simply, Agoda was not advertising the app's commercial availability. To hold otherwise would run headlong into the decisions in this Circuit and others holding that inclusion of the link to a defendant's website, without more, does not render a message advertising or telemarketing.

For these reasons, the Court holds that the messages at issue here were neither advertising

---

[4] In his opposition, Phan requested that he be given the opportunity to complete certain discovery related to the purpose of the messages if the Court were inclined to rule that the messages were neither advertising nor telemarketing. *See* Opp. at 4–5, 13–15. At the hearing on the motion, Phan conceded that he had conducted such discovery prior to the hearing, and he withdrew his request.

nor telemarketing as defined by the TCPA.  As such, Agoda needed only Phan's express consent prior to sending the messages.  There is no dispute that Agoda received such consent because Plaintiff voluntarily provided his phone number and agreed to Agoda's Terms of Use and Privacy Policy, which made clear that such messages would be sent.  *See Aderhold II*, 668 Fed. App'x at 796 ("The [FCC] has determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" (quoting *In re Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992))); Opp. at 2 (acknowledging that the express prior consent standard is "relatively low" and "requir[es] only that consumers 'knowingly' agree to receive such calls").

As such, based on the undisputed facts in the record, the messages were neither advertising nor telemarketing and Agoda received prior express consent from Phan.  Agoda has thus successfully demonstrated that it is entitled to judgment as a matter of law on the affirmative defense of consent.  *See City of Pomona*, 750 F.3d at 1049; Fed. R. Civ. P. 56(a).

## IV. ORDER

For the foregoing reasons, Agoda's motion for summary judgment is GRANTED on its only claim, for violation of the TCPA.

**IT IS SO ORDERED.**

Dated: December 13, 2018

BETH LABSON FREEMAN
United States District Judge